STEPHENS v. SOVEREIGN CAMP, W. O. W.—79 S. W. (2d) 591.

Eastern Section. November 24, 1934.

Petition for Certiorari denied by Supreme Court, February 23, 1935.

Charles S. Stephens, of Morristown, for plaintiff in error.
John R. King, of Morristown, for defendant in error.

PORTRUM, J. The defendant is a corporation known as the Sovereign Camp of the Woodmen of the World, and composed of a sovereign camp, beneficiary head camp, head camp, and camps, organized with the object of combining white male persons of sound bodily health, exemplary habits, and good moral character, between the ages of eighteen and fifty-two, into a secret, fraternal, beneficiary, and benevolent order; and to provide funds for their re-

lief; to comfort the sick and cheer the unfortunate by attentive administration in times of sorrow and distress; to create a fund from which, on reasonable and satisfactory proof of death of a beneficiary member who had complied with all the requirements of the order, from which shall be paid a sum not to exceed $3,000 to the person named in the member's certificate as beneficiary. The plaintiff, Charles S. Stephens, has been a member of this order for more than twenty years, paying monthly dues to his local camp, which dues included premiums for his insurance feature, represented by the insurance certificate. Prior to the year 1930, it was found by the society that a readjustment of its insurance contracts with its members was necessary and negotiations were entered into by the society and the plaintiff to take up his original certificate of insurance and issue a new one instead; so on August 15, 1930, effective as of August 1, 1930, the old certificate was surrendered and a new one, designated as "Ordinary whole life certificate No. ———," was issued to the plaintiff. This certificate contained the following provision:

"The non-forfeiture values shall be computed as if this certificate had been issued on the first day of August, 1922. . . .

"After thirty-six payments on this certificate shall have been made . . . the member within three months after due date of monthly payments, upon written application and legal surrender of this certificate may select one of the following non-forfeiture provisions:

"Option (a). The cash surrender value set forth in column 1 of Table A on page 3 hereof for the period to the end of which premiums have been paid in full."

The table in the certificate shows that at the end of the eleventh year the cash surrender or loan value is the sum of $237.70. This is the sum the insured is entitled to withdraw upon written application and the surrender of the certificate at the end of the eleventh year as provided by the contract. On July 14, 1933, the insured, Charles S. Stephens, wrote this letter to the society:

"I have paid my dues for July, 1933, and for all previous months thereto for more than twenty-two years. Under my policy I now have a right to cash it for $237.70. I have decided to cash this policy and will appreciate it if you will forward me check for $237.70.

"If there is any reason why this should not be done, I want to be advised at once."

The society made no reply to this letter, and on July 25 the insured addressed another letter to the society, registering it, and making a more emphatic demand.

On August 1, 1933, the society wrote this letter in reply:

"Replying to your letter in reference to obtaining cash withdrawal equity on the above certificate, at a recent session of the Sovereign Camp a law was passed suspending the cash withdrawals until Sep-

tember 1, 1935, but at the same time providing that the Board of Directors might authorize the granting of loans upon the loan value of the certificate.

"Pursuant to this authority the Board has authorized to cash loans of an amount not to exceed 50% of the loan value of the certificate. This was done because of the moratorium applying in some states and not applying the same way to others. Some states compel the association to grant the loan value and cash surrender value, and other states would not permit it, so the association passed its own law in order to make it uniform and in order to treat all members equally.

"Under the provisions of the orders of the Insurance Department of the State of Tennessee, a cash loan may be made only under specified conditions and for specified uses. It will therefore be necessary for you to submit information showing the purpose for which the loan is to be used, and on receipt of this information your application for a loan will be given proper attention."

The insured again wrote the association questioning the association's right to follow the course it detailed, and on August 23, 1933, the association replied:

"Replying to your communication of the 8th instant with reference to the authority of the Sovereign Camp to limit the payment of cash withdrawal equity, we wish to advise that under the terms of your certificate 'the articles of incorporation, the constitution, laws and by-laws of the association there in force, and all amendments to each thereof which may be made hereafter, the application for membership, including the medical examination signed by the member, the application for a change in certificate, and this certificate, shall constitute the agreement between the association and the member.'

"As to the authority of your State Insurance Commissioner, we wish to advise that the order of the State Insurance Commissioner was issued pursuant to the authority vested in him by the General Assembly of the State. Naturally the association cannot assume the responsibility for determining the authority from which the order emanates, but must observe the order until the matter has been passed upon by competent authority.

"If you will submit the information requested in our communication of August 1, such loan will be granted as is consistent with the provision of the order of your State Insurance Department and the laws of the association."

From this correspondence, it is seen that at the time the insured first made demand for the payment of the cash surrender value due under the provision of the certificate, the society was prohibited from paying the cash surrender value by the order, or moratorium issued by the Tennessee state commissioner of insurance, except for special specified purposes which are not here material. And in August, after the demand was made in July, the society amended its by-laws

and constitution, for the purposes detailed in the above correspondence, and declared a moratorium in its own right to continue until September 1, 1935, with the right vested in the board of directors to make certain exceptions, and these exceptions are not important here. The resolution embodying this change in the contract reads as follows:

"Resolve, That cash loans as provided for in beneficiary certificates be granted and paid on approved applications therefor in a sum not to exceed in the aggregate fifty per cent of the amount of the loan value specified in the certificate; provided, such payment is not inconsistent with, contrary to, or in violation of any statute of any state or district, or regulation of any insurance department prohibiting such payment; provided further, that no individual member shall be paid as a cash loan or temporary disability benefit, or both, a sum to exceed in the aggregate fifty per cent of the amount of the loan value specified in the beneficiary's certificate or of the temporary disability benefit under the provisions of section 74 of the constitution, laws and by-laws.

"All such cash loans so granted and paid, with interest thereon from the date of payment by this association until repaid by the member at the rate of five per cent per annum, compounded annually, shall be a lien against the member's certificate, and should the member thereafter fail to repay the amount so charged, with interest due thereon, he vests in the association power, authority and direction to deduct from the amount of any benefit hereafter paid such an amount as will discharge said lien created by the payment of such loan or disability benefit.

"This resolution shall become effective August 1, 1933, and shall apply to all applications for loan and disability benefits heretofore or hereafter made, and shall continue in force until September 1, 1935, unless sooner modified, amended or rescinded."

The insured continued to assert his rights for payment, but for fear his rights might be prejudiced by a failure to pay his monthly dues, so with the purpose of keeping his contract alive in the event he finally lost in his contention he continued to pay his monthly dues under protest. He took no action to enforce his claim until after the withdrawal and cancellation of the moratorium issued by the state commission of insurance for the state of Tennessee, which order and amended orders were canceled October 25, 1933. On January 5, 1934, the insured instituted this suit before a justice of the peace where it was tried and a recovery granted in his favor in the sum of $237.70; an appeal was prosecuted by the defendant to the circuit court where it was again tried before the judge, without the intervention of a jury, upon a plea of the general issue and a plea of prematurity due to the moratorium declared by the association, providing for payment not earlier than September 1, 1935. The

circuit judge was of the opinion that the association had a right to amend its constitution, and when it did so the amendment became a part of the contract and was binding upon the insured. A general order of dismissal was entered without a reservation of the rights of the insured to thereafter sue, and from this judgment the plaintiff appealed to this court.

The constitutionality of the moratorium declared by the Tennessee state commissioner of insurance is raised by an assignment of error; we think this a moot question since the order was annulled prior to the institution of this suit, and there is no constitutional question presented which would deny this court jurisdiction of the case.

The right of the association to declare a moratorium is also questioned, and its counsel presents a persuasive argument why this right should be recognized by the court; that it is a mutual organization wherein one acts for all and all act for one and a selfish few should not be permitted to make a run upon its treasury in times of stress and wreck the organization; that the character of these few exemplify Mr. Hyde; and that the traits of Mr. Hyde should be restrained for the preservation of Dr. Jekyll. Under proper circumstances, a court of equity might have jurisdiction to entertain this pleading, but then it would be necessary to present proof of an existing condition which is about to destroy the association, and a resolution of the association declaring a moratorium (without proof) would not establish the existence of a condition justifying it. The declaration of a moratorium is the Sovereign's prerogative, and, if maintainable, is maintainable as such, and no private institution, no matter how worthy, is endowed with this power; their right is the right of an appeal to the authorities to declare a moratorium for the protection of the common good. The presumption is that when the Sovereign revokes the moratorium it is no longer necessary. We are of the opinion that the society has no right in the absence of a contract to declare a moratorium. But it is insisted that the association's moratorium has become a part of the insured's contract and is binding upon him. This is the remaining question for us to decide.

The right of a mutual benevolent association to make its constitution and by-laws a part of its insuring contract with its members, reserving the right to modify the contract by amended by-laws and amendments to the constitution, is recognized in this state. But this right to change the contract by future by-laws is restricted to the extent that the vested rights of the members cannot be defeated or destroyed. That is, an association is not entitled to decrease the benefits to which a member is entitled. The rules of law are well and fully stated in our reported cases, the last of which is the case of Hazelwood v. Railroad Employees' Mutual Relief Society, 166 Tenn., 556, 64 S. W. (2d), 15, and the greatest difficulty is in

determining from the facts if the benefit of the member is decreased. In some cases the fact may establish an apparent decrease in benefit, while, on the other hand, recompense for the loss by additional benefit conferred. And there is another rule that a presumption would be that future amendments operate prospectively and not retrospectively upon antecedent contracts.

 The amendment to the by-laws and constitution upon which we are to pass operates retrospectively and upon a matured contract, and we are not concerned with the question of the right of the association to modify or alter unmatured contracts. We are of the opinion that the amendment of the constitution after the maturity of this contract, and demand made for immediate payment, had no retroactive effect upon the matured demand, and that it was beyond the power of the association to modify the contract after the demand had matured. This modification, if allowed, would greatly decrease the benefit which matured to the insured when he elected to demand payment of the amount due him under the terms of the certificate. The state moratorium did not suspend his right to mature his claim, but only suspended his right to immediate payment and a right on the part of the insured to immediate payment arose at the instance of the annulment of the state moratorium. His rights are affected in this way by the amendment: He is permitted only to withdraw 50 per cent of the amount due him, and he is required to pay 5 per cent per annum as interest compounded, and the funds retained are held as security for the repayment of the loan and interest, and, if not repaid, the balance due him would be deducted in the amount of the interest to the date of payment. He is not only required to pay interest on one-half of the sum due him for a specified time, if he takes the loan, but during the period he is entitled to no interest upon the sum retained by the company. The result is, upon the whole sum he loses 6 per cent interest, and upon half the sum he is required to pay 5 per cent compound interest, and his loss is 8½ per cent over the period. Such a modification as this is not authorized by the law which will be found reviewed in the case above cited.

 The plaintiff also sues for $20 representing monthly dues which he paid under protest in order to protect him against a forfeiture under the contract in the event he is unsuccessful in this controversy. The dues were paid under protest and the association accepted them with a full understanding of the circumstances under which they were paid, and while it asserted the contract continued in force. Under these circumstances, we incline to the view that the insured was protected, and had he died in the meantime the association would have had no valid defense to the claim for the full amount of the certificate, or $1,000. Under such circumstances, we think the association would be estopped to assert that its liability was measured by the demand of the insured for the cash surrender value, since

it accepted the dues with the knowledge of the insured's purpose in paying the dues. If this is true, then the insured was protected and received value for the amount expended and he is not entitled to recover these dues. For this reason, we disallow this claim.

However, we think the insured is entitled to recover the cash surrender value of his policy, or the amount sued for in the sum of $237.70; and that he is entitled to interest on this sum from the institution of this suit on January 5, 1934; a judgment will be entered accordingly. The judgment of the lower court is reversed, and rendered as indicated, including all costs.

Ailor and McAmis, JJ., concur.