PANNELL *v.* SOVEREIGN CAMP, W. O. W.

*(Nashville,* December Term, 1936.)

Opinion filed March 1, 1937.

246

MAYFIELD & MAYFIELD, of Cleveland, and CHAS. C. GUINN, of Benton, for complainant.

PAUL R. STEWART, of Athens, for defendant.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

On December 14, 1925, the Sovereign Camp, Woodmen of the World, issued a beneficiary certificate in the

sum of $2,000 upon the life of Thomas A. Pannell and naming his wife, complainant in this suit, beneficiary. The certificate provided for the payment of an additional $2,000 in the event that the death of the insured resulted from an accident. The insured died on January 31, 1931, as the result of a pistol shot. Defendant promptly paid the beneficiary the face amount of the certificate on February 13, 1931. This suit to collect double indemnity was filed March 16, 1935, more than four years after the payment of the face of the policy.

Defendant is a fraternal benefit association, organized under the laws of the State of Nebraska, operating upon the assessment plan for the benefit of its members and not for profit.

The certificate stipulates that it is issued and accepted subject to all the conditions set forth in the constitution and by-laws of the society; that the member agrees that any changes, additions, or amendments thereto made subsequent to the issuance of the certificate shall bind the member and his beneficiary, and shall govern and control the agreement in all respects, the same as though such changes had been made prior to and were in force at the time of the application and incorporated in the certificate. These provisions are in accord with the requirements of section 6367 of the Code.

Effective November 1, 1929, the constitution and by-laws of the society were amended to provide, in substance, that the society should not be liable for double indemnity for death by accident where it is claimed the insured was killed by the accidental discharge of firearms or shooting, unless the fact that such shooting was accidental shall be established by the testimony of at least

one person, other than the member, who was an eyewitness to such shooting.

In *Mays* v. *Sovereign Camp, W. O. W.*, 151 Tenn., 604, 271 S. W., 34, 37, 40 A. L. R., 1266, it was held that by-laws of fraternal insurance companies which form a part of the policy are enforceable against one *sui juris* who accepts them and agrees to abide by them, if reasonable. An amendment cannot be adopted so as to deprive the member of a vested right, as where, for example, the amount of the benefit to which the member is entitled is decreased. *Hazlewood* v. *Mut. Relief Soc.*, 166 Tenn., 556, 64 S. W. (2d), 15; *Gaut* v. *American Legion of Honor*, 107 Tenn., 603, 64 S. W., 1070, 55 L. R. A., 465; *Wallace* v. *McPherson*, 138 Tenn., 458, 197 S. W., 565, L. R. A. 1918A, 1148.

The by-law here in question, providing that the society shall not be liable for double indemnity for death of the member where he is killed by the accidental discharge of firearms or shooting, unless the fact that such shooting was accidental be established by the testimony of at least one eyewitness, other than the member, is but a rule of evidence agreed to by the parties. As said in *Mays* v. *Sovereign Camp, W. O. W., supra:* "There is no vested right in a rule of evidence, and parties may, by contract, change an established rule of evidence, and provide that a different rule shall apply in determining controversies that may arise between the parties to the contract."

It appears with reference to the shooting that the insured just prior to his death was seated in the living room of his home with other members of his household; that without making any statement of his intention he left the living room and entered a bedroom to the rear

of the living room; that about five minutes later a shot was heard and he was found by members of the family in the bedroom lying dead with a shot through the head; that a revolver was found in his hand or near his body from which shots had been fired; there were no powder burns on his head or face; that the range of the bullet suggested the possibility that the shot might have been fired from the outside through an open window. The chancellor applied the presumption against suicide. There was no eyewitness to the shooting. No one was in that room, so far as the record discloses, except the deceased, from the time he left the living room until after the shot was fired. The testimony of no eyewitness to the shooting of the insured was furnished the society. The chancellor found that complainant, not having made proof in the form and manner required by the laws of the society, could not recover. The chancellor also held that the contractual period of limitation of one year barred complainant's right of action on the certificate.

From a decree dismissing the bill complainant appealed to the Court of Appeals, with the result that the decree of the chancellor was affirmed. Complainant has filed his petition for *certiorari*. Twelve assignments of error have been made. These appear to be discussed under several heads.

It is first insisted that the chancellor and the Court of Appeals were in error in holding that defendant is a fraternal benefit society, duly qualified to do a fraternal insurance business in Tennessee. The certificate sued on describes the society as "A fraternal Beneficiary Association Organized Under the Laws of Nebraska." The bill avers that the defendant was doing a local and

general business in Tennessee, but avers that it was an "old line insurance business." No reference to any part of the record showing that the society was doing an old line insurance business in Tennessee is made.

There is an absence of any allegation in the bill that defendant had failed to comply with section 6399 of the Code requiring certified copies of amendments to its constitution and by-laws. No such issue was tendered. It is complainant's theory, reflected in brief and argument, that defendant should not be permitted to rely upon the exemption from the general insurance laws upon such associations because of noncompliance with the statute, and that, therefore, the contract could not be changed by amendment after it was written. This contention ignores the fact that prior to the enactment of chapter 172, Acts 1921 (Code 6367), section 8 of which requires a provision that amendments made subsequent to the issuance of the certificate shall bind the member and his beneficiary, it was held in *Supreme Lodge K. of P.* v. *LaMalta,* 95 Tenn., 157, 31 S. W., 493, 30 L. R. A., 838, that a valid law passed by a benevolent society after the application for membership and issuance of the certificate, and before the death of the member, is operative against him, where, in his application, he agreed to conform to the rules now in force or which may "hereafter be enacted." That case was decided in the year 1895. Thus the validity of the agreement in the instant cause does not rest upon the statute above referred to. Whether defendant complied with the statute or not, the terms of the contract upon which complainant sues remain unimpaired. Complainant not having furnished defendant testimony of an eyewitness to

the shooting that it was accidental, as required by the contract, she cannot recover.

█ The next insistence is that the period of limitation of action on the certificate of one year should not be applied upon the theory, as we understand it, that defendant not having complied with the statute regulating fraternal benefit associations is not excluded from the provisions of Code, 6179 et seq., providing, among other things, a five-year period of limitation. As hereinbefore stated, there is neither allegation nor proof that defendant did not comply with the requirements of the statute.

█ It is also insisted that the matter of the payment of the double indemnity "was pending and undecided until March, 1935, when defendant declined by letter to pay the balance," and that the defendant had the policy in its possession. As hereinbefore stated, on proof furnished the company of the death of the insured, it promptly paid the face of the policy. Nothing more was heard of the matter until March 16, 1935, more than four years thereafter. During this period further payment was not pending or undecided. In remitting the check for $2,000, defendant wrote a friendly letter of advice and counsel. Among other things, it was stated:

"Permit us to suggest that we do not consider our entire obligation has been met when we send you this check. I feel it my duty to suggest conservation of the money thus received, and to warn you against those who might try to induce you to make investments or speculations that might prove disastrous."

Taken with its context the language, "we do not consider our entire obligation has been met," can by no

possibility be construed to mean that more money might be due complainant, as is contended by her.

The chancellor and the Court of Appeals were correct in holding the action barred by the contractual period of limitation.

▆ It is next insisted that the provision in the policy requiring the testimony of an eyewitness to the shooting does not require that a person should have actually seen the shooting. We cannot agree with this contention. Webster's New International Dictionary defines "eyewitness" as, "One who sees an object or act; esp., one who testified what he has seen." No one saw the shooting of the insured; hence, there was no eyewitness who could furnish testimony that it was accidental. No one was in the room with deceased when the shooting took place, and therefore none of the facts or circumstances of the shooting were witnessed by anyone. Some of the household went into the room soon after the shooting, and various theories may be drawn from what they discovered. A coroner's jury found that the deceased came to his death due to "a pistol shot in his own hands." What really took place is a matter of surmise and conjecture. The cause differs in its facts from the authorities relied on by able counsel for complainant. Of course, it was not necessary that an eyewitness see "the load leave the discharged gun" (1 C. J., 508), but it was necessary that there be an eyewitness who could establish by his testimony that the shooting was accidental.

*Certiorari* denied.