771 F.Supp. 288 (1991)
MUTUAL GUARANTY CORPORATION, Plaintiff,
v.
ARSENAL CREDIT UNION, Defendant.
No. 88-0450-C-7.
United States District Court, E.D. Missouri, E.D.
January 11, 1991.
Steven M. Hamburg, St. Louis, Mo., Robert Krik Walker, Chattanooga, Tenn., for plaintiff.
Gary W. Bomkamp, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
HAMILTON, District Judge.
This matter is before the Court on Plaintiff Mutual Guaranty Corporation's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.
This Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the *289 moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.
A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 247, 106 S.Ct. at 2509. The nonmoving party may not rest upon mere allegations or denials of his pleading. Id. at 256, 106 S.Ct. at 2514.
In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Id. at 255, 106 S.Ct. at 2513. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Id. at 249, 106 S.Ct. at 2510. The parties submitted proposed stipulations of uncontested facts which are summarized as follows.
Mutual Guaranty Corporation (hereinafter MGC) is a mutual share guaranty association created by special statutory authority under the laws of the state of Tennessee. MGC's principal place of business is Chattanooga, Tennessee. MGC's membership consists entirely of credit unions.
Arsenal Credit Union (hereinafter Arsenal) is a Missouri credit union with its principal place of business in St. Louis County. Arsenal became a member of MGC, subject to the bylaws of MGC, on June 9, 1978. The shareholdings and deposits of Arsenal were then guaranteed under a contract of insurance between MGC and Arsenal. According to the contract of insurance between MGC and Arsenal and the bylaws of MGC, MGC is annually to declare and collect additions to member's contributed capital and administrative fees. MGC notified Arsenal that its addition to contributed capital for 1987 was $28,992.75. The administrative fee for 1987 was $7,225.96.
On October 1, 1987, the Board of Directors of MGC levied a special assessment to its capital fund in the amount of one half of one percent (.5%) of share and insured accounts. Under section 45-4-1108(d) of the Tennessee Code Annotated, MGC could levy a special assessment to the capital fund in the event of impairment to the capital fund. Special assessments are subject to the approval of the Commissioner of Financial Institutions of the state of Tennessee. The special assessment was approved by the Commissioner on October 5, 1987. MGC notified Arsenal of the special assessment in the amount of $178,906.26 in mid October.
The board of directors of MGC also amended Article IV, Section G.7.b. of the bylaws to increase the forfeiture on withdrawal from 30% of contributed capital to 100% of contributed capital. Arsenal received notice of the change in the bylaws on October 5, 1987.
On October 7, 1987, Arsenal adopted a resolution declaring its intent to terminate membership in MGC. On January 19, 1988, Arsenal sought and received the approval of its membership to withdraw membership in MGC. On February 29, 1988, Arsenal notified MGC that it had alternative insurance.
Arsenal refused to pay its addition to contributed capital in the amount of $28,992.75 and administrative fees in the amount of $7,225.96. Arsenal also refused to pay the special assessment in the amount of $178,906.26. MGC retained 100% of Arsenal's capital contributions.
MGC filed suit against Arsenal for the annual addition to contributed capital, the administrative fees and the special assessment. *290 Arsenal counterclaimed for repayment of its capital contributions in the amount of $340,700.91.

Discussion
MGC, once named the State Credit Union Share Insurance Corporation, was created by an act of the Tennessee General Assembly. MGC is a nonprofit membership corporation. Tenn.Code Ann. § 45-4-1101(a). Under the provisions of the statute creating MGC, any out-of-state credit union which becomes a member of MGC "shall have the same privileges, benefits, and obligations of membership as those credit union members chartered under the laws of the state of Tennessee." Tenn.Code Ann. § 45-4-1107. Arsenal agreed in paragraphs one and ten of a contract signed June 9, 1978, both specifically to be governed by the provisions of Public Chapter 577 of 1974 and generally to be governed by the provisions of the laws of Tennessee. Capital Contribution, Administrative Fee, and Special Assessment
The contribution to capital, administrative fee, and the special assessment are all provided for under Tennessee statutes. Section 45-4-1108(a) provides in pertinent part:
The corporation shall annually declare and collect additions to the capital account as the corporation may deem appropriate, except to the extent that refunds have been paid under subsection (b) of this section.
Tenn.Code Ann. § 45-4-1108(a). Similarly, statute provides for the collection of an annual administrative fee as follows:
A regular annual administrative fee, not to exceed one percent (1) of the member credit union's shares, accounts and certificates, shall be levied by the corporation. The corporation may raise, lower or waive the annual administrative fee when the corporation and the commissioner of financial institutions agree that the total funds of the corporation justify or require such change.
Tenn.Code Ann. § 45-4-1109(a)(1). Part c of the same section provides that the basis for calculating the administrative fee due the ensuing year is the member's shares, accounts, and certificates as of either December 31 or the date the member's fiscal year ends. Tenn.Code Ann. § 45-4-1109(c). Likewise, Tennessee law provides for special assessments:
In the event of potential impairment of the corporation's capital fund, a special assessment to the capital fund may be levied by the corporation with the approval of the commissioner of financial institutions....
Tenn.Code Ann. § 45-4-1108. The MGC bylaws incorporate the statutory provisions.
Defendant asserts (1) the contribution to capital, the administrative fee, and the special assessment were not agreed to in the original 1978 contract between the parties and (2) Arsenal's notice of termination was effective as termination of the membership. Defendant's first argument fails because the contract specifically incorporated the statutory provisions empowering MGC to collect contributions to capital, administrative fees, and special assessments.
Defendant's second argument also fails. Defendant maintains that the notice of termination, not the actual withdrawal from membership, effectively relieved it of the obligations of membership. Termination of membership in MGC was subject to the following conditions as provided in the bylaws at Article IV. G. 1: (a) notice of date of termination given to MGC and the state commissioner of financial institutions not less than ninety days nor more than one hundred eighty days prior to the proposed date of termination; (b) an affirmative vote of a majority of the credit unions membership; and (c) compliance with other provisions in Section G. Arsenal's coverage continued until the effective date of withdrawal from membership. Had it suffered a loss during the period between the notice and the withdrawal date, MGC would have been obligated to pay. To argue that Arsenal received no benefit because it made no claim is to misunderstand the purposes of insurance. Arsenal received the benefits of membership until *291 February 29, 1988. It must likewise meet the obligations of membership for that period.

Counterclaim for Return of Capital Contributions
Plaintiff contends that as a matter of law it is entitled to summary judgment on the Defendant's counterclaim because Arsenal has not sought administrative review as required by Tenn.Code Ann. § 45-4-1113. That section provides:
(a) If a Tennessee credit union is aggrieved by a decision or order of the corporation or the commissioner of financial institutions, or if the corporation is aggrieved by a decision or order of the commissioner of financial institutions or of a supervisory agency, the Tennessee credit union or corporation shall, upon appropriate petition and after due notice, be entitled to a hearing and administrative review by the Tennessee credit union board of appeals, which may stay enforcement of such decisions or orders pending administrative review.
(c)(1) Judicial review of decisions or orders of the corporation shall not be available unless the aggrieved party has sought administrative review under this section, and a final decision has been made by the credit union board of appeals.
Tenn.Code Ann. § 45-4-1113 (emphasis added). Arsenal maintains that summary judgment is not appropriate because (1) the provision for administrative review applies only to Tennessee credit unions and (2) the history of the board and its present membership make seeking administrative review a futile act. Arsenal's first argument is well taken. This section of the statute specifically refers to Tennessee credit unions. In other sections the state assembly specifically included out-of-state credit unions by reference to "credit unions that become members under § 45-4-1107(c) or (d)" or by a general reference to "any credit union." Here the assembly specified Tennessee credit unions. Thus, Arsenal is not precluded from pursuing its counterclaim because it failed to pursue its administrative remedies in Tennessee.
However, Arsenal contends that it is entitled to recover either 70% or 50% of its contributions to capital, based on either the 1983 amendment terms or the terms at the time the contract was formed, because the October 1 amendment to the bylaws increasing the forfeiture on withdrawal to 100% was a unilateral alteration in the terms of the contract without consideration. In 1978 when Arsenal became a member of MGC, the forfeiture on withdrawal was 50%. In 1983 the Board of MGC amended the bylaws to change the forfeiture amount on withdrawal to 30%. Arsenal does not contend that the process for changing the forfeiture rate in 1983 differed from that in October 1987. Arsenal contends it is entitled to a refund of 70% of paid-in capital contributions because the October amendment to the bylaws was void as a unilateral alteration of the contract under Dunlop Tire & Rubber v. Service Merchandise, 667 S.W.2d 754 (Tenn. App.1983). Dunlop does not deal with an agreement between a mutual organization and one of its members and is, therefore, inapposite.
Arsenal agreed by contract to "comply with the bylaws of the Corporation, as from time to time amended." Under Tennessee law a mutual benefit corporation or organization's bylaws become part of the contract between the organization and its members. Hazelwood v. Railroad Employees' Mutual Relief Society, 166 Tenn. 556, 64 S.W.2d 15, 16 (Tenn.1933). Amendments to the Bylaws of a mutual organization are enforceable as long as they are reasonable and do not deprive a member of a vested right. Pannell v. Sovereign Camp, W.O.W., 171 Tenn. 245, 102 S.W.2d 50, 51 (Tenn.1937); Hazelwood, 64 S.W.2d at 16; Stephens v. Sovereign Camp, W.O.W., 18 Tenn.App. 476, 79 S.W.2d 591, 594 (Tenn.Ct.App.1934).
Arsenal has not contended that MGC did not abide by the procedures for amendment of its bylaws, nor has Arsenal contended that the action deprived it of a vested right. Its claim for refund of contributions to capital is not supported by Tennessee law *292 concerning mutual organizations such as this one.
Arsenal has not demonstrated that there is a dispute as to a genuine issue of material fact.
Accordingly,
IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment on both its claim against Arsenal Credit Union and Arsenal Credit Union's counterclaim is GRANTED.