·EDUCATIONAL EMPLOYEES CREDIT UNION, Plaintiff,

v.

MUTUAL GUARANTY CORPORATION, Defendant.

No. 4:92CV1016SNL.

United States District Court, E.D. Missouri, E.D.

May 20, 1993.

2. In her notations, nurse Vondera also stated that plaintiff attempted to pinch her while she was examining him.

**1296**

Henry F. Luepke, III, Associate, Peter T. Sadowski, Partner, Stolar Partnership, St. Louis, MO, for plaintiff.

John F. Arnold, Chairman, Terrance J. Good, Vice President, Carolyn M. Kopsky, Lashly and Baer, St. Louis, MO, for defendant.

## MEMORANDUM

LIMBAUGH, District Judge.

Plaintiff, a Missouri credit union, has brought this multi-count complaint seeking the return of monies deposited with the defendant, a nonfederal Tennessee share guaranty membership corporation. Plaintiff seeks return of its capital contribution and special assessment, totalling approximately $2,000,000.00, pursuant to § 370.362 R.S.Mo. (1991). Defendant contends that its refusal to refund these monies is proper under the provisions of the membership contract and that § 370.362 is violative of the Contract Clause of the United States Constitution, U.S. Const. Art. 1, § 10, cl. 1, as well as the Missouri Constitution. This matter is before the Court on the parties' cross-motions for summary judgment, filed September 17 and October 27, 1992. Responsive pleadings have been filed.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null,* 554 F.2d 896, 901 (8th Cir.1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.,* 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant,* 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.,* 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to an examination of the facts.

The material facts are largely undisputed. Mutual Guaranty Corporation (MGC) is a mutual share guaranty association created by special statutory authority under the laws of the state of Tennessee. Tenn.Code Ann. § 45–4–1101(a). Its principal place of business is in Chattanooga, Tennessee. MGC's membership consists entirely of credit unions, both domestic and foreign. Its primary purpose is to guarantee the accounts of individual account holders of member credit un-

.. 

ions. Under Tennessee law, any out-of-state credit union becoming a member of MGC "shall have the same privileges, benefits, and obligations of membership as those credit union members chartered under the laws the state of Tennessee." Tenn.Code Ann. § 45–4–1107.

On June 1, 1978 defendant was authorized to insure Missouri credit unions. This authorization is evidenced by an agreement among the State Credit Union Share Insurance Corporation[1], the Commissioner of the Department of Banking of the State of Tennessee, the Director of the Division of Insurance of the State of Missouri, and the Director of the Division of Credit Unions of the State of Missouri. Plaintiff's Exhibit G and Defendant's Exhibit C.[2] The 1978 Agreement recognizes that, for a temporary period of time, MGC would be considered as conducting the business of insurance in Missouri and that it would be subject to the provisions of Missouri's insurance laws. 1978 Agreement, Section J. However, upon the effective date of the enactment of an amended § 370.375 R.S.Mo., MGC would become subject to the exclusive jurisdiction, supervision, regulation, and examination of the Director of the Division of Credit Unions for the State of Missouri. 1978 Agreement, Section K and Section M, subsection (1). In 1982, § 370.375 R.S.Mo. was enacted and clearly provided that corporations, such as MGC, would in fact be subjected to the exclusive jurisdiction, supervision, regulation, and examination of the Director of the Division of Credit Unions for the State of Missouri.

In October 1984, plaintiff entered into a contract of insurance with MGC. Plaintiff's Exhibit C and Defendant's Exhibit D. The 1984 Contract contained a "choice-of-law" provision stipulating that the contract would be subject to the provisions of the laws of Tennessee. 1984 Contract, paragraph 1. Plaintiff further agreed to "comply with the bylaws of the Corporation (MGC), as from time to time amended. The Credit Union (EECU) further agrees that this contract may be amended by an amendment to the bylaws of the Corporation, provided the Corporation shall mail written notice of such amendment to the Credit Union at least ten (10) days prior to the effective date of such amendment." 1984 Contract, paragraph 2.

Tennessee law provides for the collection of capital contributions, administrative fees, and special assessments by MGC from its credit union members. Tenn.Code Ann. 45–4–1108 and 1109. As a member, EECU was required to make and maintain during its membership period a capital contribution equal to 1% of the shares of its account holders. EECU was also subject to the payment of any special assessments. During the relevant time period, the By–Laws in effect provided that the aggregate of the capital contributions, and any special assessment paid by a member credit union constitute the equity interest of such member in MGC and shall be considered as a part of the assets of said member. Plaintiff's Exhibit D and E. Upon joining MGC, plaintiff deposited with MGC, as its capital contribution, the sum of $1,486,558.17. On December 1, 1987 EECU paid to MGC, as a special assessment, an additional sum of $559,159.81. The sum total of funds deposited by EECU with MGC is $2,045,717.98.

At the time that EECU became a member of MGC, the By–Laws provided that upon withdrawal of a member credit union, "[t]he member credit union shall be entitled to a return of paid-in capital contributions. Provided, however, the Board of Directors of the Corporation, in the exercise of its sole discretion, may assess a penalty ("withdrawal penalty") against the withdrawing member credit union in an amount not to exceed thirty (30%) percent of the withdrawing member credit union's paid-in and due capital contributions and special assessments." Plaintiff's Exhibit D, By–Laws, Article IV, Section 6(g)(2)(aa). On October 1, 1986 MGC's Board of Directors voted unanimously to

1. Mutual Guaranty Corporation is the successor in interest to the State Credit Union Share Insurance Corporation.

2. In many instances, the parties have filed the same exhibits with their pleadings. In those instances where duplicate exhibits have been submitted, the Court may cite to only one party's exhibit. This is not intended to indicate any preference for a particular party's exhibit, but merely to avoid needless repetition.

amend the By–Laws by materially changing Article IV, Section 6(g)(2)(aa). Instead of allowing any return of capital and special assessment funds to a withdrawing credit union member, the amended By–Laws now provided that MGC would **retain** such funds in total. Plaintiff's Exhibit E, 1987 Amended By–Laws, Article IV, Section G(7)(b). On October 2, 1987 notice was mailed to all credit union members, including plaintiff, of the amendment. The notice informed members that the amendment was effective as of October 12, 1987 and that it was not applicable to any member terminating membership prior to the effective date of October 12, 1987. Defendant's Exhibit F. Plaintiff took no action regarding this amendment.

On March 7, 1991 the Missouri legislature enacted § 370.362 R.S.Mo. This statute repealed §§ 370.370 to 370.382 which pertained to credit union share guaranty corporations, including § 370.375 which authorized MGC to do business in Missouri.

Section 370.362 mandates that Missouri credit unions must be insured by the National Credit Union Share Insurance Fund (NCUSIF) in order to remain in operation. § 370.362(1). It specifically required all credit unions, not currently insured by NCUSIF, to apply for basis share insurance coverage with NCUSIF within ninety (90) days of March 7, 1991 (effective date of § 370.362). A certificate of insurance from NCUSIF was required within twenty-four (24) months of March 7, 1991. § 370.362(1) and (2). Although all Missouri credit unions were now required to obtain their basic share insurance coverage from NCUSIF, excess coverage could be obtained from a nonfederal insurer (such as MGC). § 370.362(9).

With regards to Missouri credit unions insured by a nonfederal insurer, Section 370.-362(6) provides that upon conversion from a nonfederal insurer to NCUSIF, "the nonfederal insurer shall immediately return to such credit union the amount of unearned premiums, paid-in capital contribution and special assessments that the credit union has paid to such nonfederal insurer, unless the credit unions, which are members of such nonfederal insurer subsequent to March 7, 1991, agree otherwise." Finally, Section 370.362(7) provides that "[n]o bylaw amendment of any nonfederal insurer shall be binding upon any Missouri credit union unless and until approved by the Missouri division of credit unions."

Although the MGC's 1987 Amended By–Laws provide for retention of a withdrawing member's capital contribution and special assessments, there is no Tennessee law which either requires a withdrawing credit union member to forfeit its capital contribution and special assessments or requires MGC to refund such monies to a withdrawing member.

As of December 31, 1991 EECU had applied for and obtained basic share insurance coverage from NCUSIF, thus it informed MGC of its termination of membership and requested the return of its funds. To date, MGC has refused to return these funds to EECU.

The primary issue addressed in both summary judgment motions is whether MGC must return certain funds as mandated by § 370.362 R.S.Mo. even though under the terms of their contract, MGC is not required to do so, and no Tennessee law, which governs the contract, requires MGC to do so. In connection with this issue, the question of the violation of the Contract Clause of the United States Constitution by application of the Missouri statute has been raised.[3]

Defendant contends that Tennessee law, and not Missouri law, governs the parties' contractual rights and obligations. It further contends that the choice-of-law provision in the Contract, stipulating that the Contract would be subject to the laws of Tennessee, does not interfere with any fundamental policy of the State of Missouri. Finally, it argues that application of the Missouri statute would substantially impair and interfere with the parties' established contractual rights and duties, thereby violating the Contract Clause of the United States Constitution. Of

---

**3.** Although the parties address the constitutionality of § 370.362 under both the Missouri Constitution and the United States Constitution, the Court believes that an analysis germane to the Contract Clause of the United States Constitution obviates the need to separately address the Missouri Constitution.

all the cases cited by the defendant, the one heavily relied upon and of most significance to this Court is a recent decision out of this district court in a similar situation concerning MGC and a Missouri credit union, *Mutual Guaranty Corporation v. Arsenal Credit Union,* 771 F.Supp. 288 (E.D.Mo.1991).

Plaintiff contends that the choice-of-law provision in the Contract should be disregarded because enforcing the terms of the Contract violates Missouri's fundamental policy against forfeitures, especially with regard to financial institutions; and furthermore, no Tennessee law requires such a forfeiture. Plaintiff also argues that application of the statute does not violate the Contract Clause of the federal constitution because § 370.-362(6) is a permissible exercise of Missouri's police power.

■■■ The 1984 Contract clearly states that the parties' duties and obligations are subject to Tennessee law. "Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Electrical and Magneto Service (EMS) v. AMBAC International,* 941 F.2d. 660, 661 (8th Cir. 1991) quoting, *Whirlpool Corp. v. Ritter,* 929 F.2d. 1318, 1320 (8th Cir.1991). Missouri courts rely on the Restatement of Conflicts (Second) in contract actions. *EMS,* at 661. Under the Restatement, a choice of law provision in a contract must be disregarded if application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of a particular issue. Restatement of Conflicts (Second), § 187(2)(b). Missouri bypasses the Restatement's formal analysis and simply requires that the choice of law provision be given effect unless to do so would violate a fundamental policy of Missouri. *EMS,* at 662; *see also, State ex. rel Geil v. Corcoran,* 623 S.W.2d. 555 (Mo.App.1981).

■■■ The parties concede that there is no Tennessee statute which requires MGC to return the funds in question to EECU or requires EECU, as a withdrawing credit union member, to forfeit its funds. Although they don't agree that Tennessee law should apply (thus adherence to the terms of the

Contract), it is apparent that if Tennessee law does not apply, Missouri law will apply. Thus the pivotal issue to be determined is whether the non-forfeiture provision of § 370.362 is such a fundamental policy of state law that Missouri courts would not apply a choice of law provision selecting a state that does not have a similar statute or addresses the issue.

In 1991, eighteen (18) sections within Chapter 370 (Credit Unions) were repealed and replaced with seven new sections relating to the same subject matter, with an emergency clause. The emergency clause states:

"Because of the need to insure that credit unions in this state remain solid and financially strong and that the assets of citizens of this state remain safe and secure, this act is deemed necessary for the immediate preservation of the public health, wealth, peace and safety, and is hereby declared to be an emergency act within the meaning of the constitution, and this act shall be in full force and effect upon its passage and approval."

1991 Mo.Laws 875. Chapter 370 was not the only chapter revised. Due to the unstable economic climate and the alarming increase in the number of financial institutions closing, the Missouri legislature enacted many revisions to its statutes pertaining to savings and loans (Chapter 369) and banks and trust companies (Chapter 362). These tighter regulations were enacted in order to reflect the concerns expressed in the Chapter 370 Emergency Clause and to carry out the goals of financial strength and security for Missouri's financial institutions and citizens. Missouri's financial well-being is undeniably a significant state interest which § 370.362 is intended to promote.

Section 370.362 promotes the fundamental policy regarding the continued financial security of Missouri's credit unions by mandating they be covered by a federal insurer and requiring nonfederal insurers, who are licensed to conduct business in Missouri, to return capital contributions and special assessments upon withdrawal from membership. These monies constitute large sums

which could adversely affect a credit union's stability if retained by the nonfederal insurer, considering the fact that the withdrawing credit union must now make a large cash outlay for insurance with the NCUSIF.

The Court further notes that this commitment to protecting and securing the financial stability of Missouri credit unions is also indirectly reinforced by § 370.362(7) and (8). Subsection 7 provides that "[n]o bylaw amendment of any nonfederal insurer shall be binding upon any Missouri credit union unless and until approved by the Missouri division of credit unions." This subsection indicates that Missouri is protecting its credit unions from any changes in the original contractual relationship which might negatively impact upon the stability of the credit union. As in the present case, EECU entered into a contractual relationship with MGC wherein the return of the monies in question was not an issue. However, a by-law amendment was passed, with little notice time to EECU to respond, which could be financially devastating to EECU. Subsection (7) is intended to protect its credit unions from application of these by-laws which are intended to promote the financial security of the nonfederal insurer with little regard to the financial security of the member.

Subsection (8) provides that "[n]o special assessment or fee may be imposed upon any Missouri credit union by any nonfederal insurer unless and until approved by the Missouri division of credit unions." Once again, this subsection is intended to protect the Missouri credit unions from actions by the nonfederal insurer which are intended to benefit the nonfederal insurer but may prove fatal to the credit union. Both of these subsections reflect paternalistic legislation designed to protect Missouri credit unions who are not in a position to protect themselves due to the superior bargaining power and contractual position that the nonfederal insurer holds. *See, EMS,* 941 F.2d at 663 (ninety-day notice requirement of Chapter 407 is a fundamental policy of Missouri).

Although the Court finds that Missouri courts would not honor the choice of law provision present in the 1984 Contract, the Court further explains its determination by addressing MGC's points and caselaw. As previously noted, the parties agree that Tennessee has no statute addressing the return/retention of monies when a member credit union withdraws. MGC interprets the fact that there is no statute requiring the return of these monies as implying tacit approval of MGC to "legislate" the matter itself. The Court disagrees. There is nothing under Tennessee caselaw or statutes to support such a supposition. Given that Missouri clearly addresses the issue and Tennessee does not, shows that the stronger state interest lies with Missouri.

As for as the "rules of contract" expressed by MGC, the Court has no quarrel. However, this case is not one of simple contract interpretation. A provision of the 1984 Contract flies squarely in the face of a Missouri statute intended to protect against such a provision. Tennessee contract law must be disregarded pursuant to Missouri's choice-of-law rules when application of such a law violates a fundamental policy of Missouri, as it does in this case.

Finally, the Court notes the recent case of *Mutual Guaranty Corp. v. Arsenal Credit Union,* 771 F.Supp. 288 (E.D.Mo.1991). In that case, Judge Hamilton ruled that Arsenal (a Missouri credit union) was obligated to abide by its contract and the by-laws. She found that Arsenal was subject to Tennessee law and that under Tennessee law a mutual benefit corporation or organization's by-laws become part of the contract between the organization and its members. *Id.,* at 291, citing *Hazelwood v. Railroad Employees' Mutual Relief Society,* 166 Tenn. (2 Beeler) 556, 64 S.W.2d. 15, 16 (1933). She further found that amendments to bylaws are enforceable as long as they are reasonable and do not deprive a member of a vested right. *Id.,* at 291, citing *Pannell v. Sovereign Camp, W.O.W.,* 171 Tenn. (7 Beeler) 245, 102 S.W.2d. 50, 51 (1937); *Hazelwood,* at 16; *Stephens v. Sovereign Camp W.O.W.,* 18 Tenn.App. 476, 79 S.W.2d. 591, 594 (1934). She concluded that Arsenal was not entitled to a refund of its capital contributions (upon its withdrawal of membership) under the terms of the contract or Tennessee law. *Id.,* at 291–92. This decision was rendered Janu-

ary 11, 1991, almost two months before the effective date of § 370.362. Consequently, § 370.362 is not even mentioned; more importantly, its application to a dispute between a Missouri credit union and nonfederal insurer is not even considered. The Court firmly believes that if *Mutual Guaranty Corp. v. Arsenal Credit Union* had been decided after the effective date of § 370.362 the outcome would have been different.

Finally, the Court addresses the constitutional challenge regarding the application of § 370.362(6) to the 1984 Contract and 1987 By-laws Amendment. MGC contends that, even if Missouri law governs, application of § 370.362(6) to the present dispute would violate both the Missouri Constitution and the United States Constitution because it would impair the contractual obligations of the parties [4] and is retrospective in operation.

Article I, § 10 of the United States Constitution provides: "No State shall ... pass any Law impairing the Obligation of Contracts." MGC claims that § 370.362(6) requiring the return of EECU's capital contribution and special assessment substantially impairs the obligations of the 1984 Contract (and 1987 By-laws Amendment) because the contract specifically states that MGC is to retain these monies.

■ It is well-established that a statute does not violate the Contract Clause simply because it affects, or even totally bars, the performance of contractual obligations entered into before its enactment date. *Exxon Corp. v. Eagerton*, 462 U.S. 176, 190, 103 S.Ct. 2296, 2305, 76 L.Ed.2d 497 (1983); *Allied Structural Steel v. Spannaus*, 438 U.S. 234, 241–42, 98 S.Ct. 2716, 2720–21, 57 L.Ed.2d 727 (1978); *Burlington Northern R. Co. v. State of Nebraska*, 802 F.2d 994, 1005 (8th Cir.1986). The limits imposed by the Contract Clause "must be accommodated to the inherent police power of the state to 'safeguard the vital interests of its people.'" *Burlington Northern v. Neb.*, at 1005, citing *Allied Structural Steel, supra; Energy Reserves Group v. Kansas Power & Light Co.*,

459 U.S. 400, 410, 103 S.Ct. 697, 703, 74 L.Ed.2d 569 (1983); *see also, Keystone Bituminous Coal Association v. DeBenedictis*, 480 U.S. 470, 503–04, 107 S.Ct. 1232, 1251–52, 94 L.Ed.2d 472 (1987); *Whirlpool Corp. v. Ritter, supra; In Re Southeast Arkansas Landfill, Inc.*, 137 B.R. 735, 744 (E.D.Ark. 1992).

■ The Supreme Court has consistently employed a three-part test to evaluate whether a state statute violates the Contract Clause by substantially impairing a contractual relationship. *General Motors Corp. v. Romein*, —— U.S. ——, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992); *Energy Reserves*, 459 U.S. at 404, 103 S.Ct. at 701; *Allied Structural Steel*, 438 U.S. at 244, 98 S.Ct. at 2722; *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977); *Burlington Northern v. Neb.*, at 1006. The three-part inquiry is 1) whether there is a contractual relationship; 2) whether the state statute impairs that contractual relationship; and 3) whether the impairment is substantial. *General Motors v. Romein*, —— U.S. at ——, 112 S.Ct. at 1109–10. The first two parts are of no concern and the Court need only address the third part.

■ If the state law has, in fact, operated as a substantial impairment upon a contractual relationship, the state law violates the Contract Clause unless 1) it is supported by a "significant and legitimate public purpose behind the regulation"; and 2) "the adjustment of the 'rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *In re Walker*, 959 F.2d 894, 899 (10th Cir.1992), quoting *Energy Reserves*, 459 U.S. at 411, 103 S.Ct. at 704 and *United States Trust Co. v. New Jersey*, 431 U.S. at 22, 97 S.Ct. at 1517; *Burlington Northern v. Neb.*, at 1006. A "significant and legitimate public purpose" to remedy a broad general, social, or economic problem would be acceptable. "The public purpose need not be addressed to an emergency or temporary

---

**4.** Although MGC speaks of "impairment of the parties' contractual obligations" it is quite apparent in its pleadings, that the only "impairment" it is concerned with is the mandatory return of

EECU's capital contribution and special assessment because the return of these monies is not a contractual obligation and contrary to the 1987 By–Laws Amendment.

situation, as long as the state enacts a generally applicable rule designed to advance the societal interest." *Burlington Northern v. Neb.*, at 1006, citing *Energy Reserves*, 459 U.S. at 412, 103 S.Ct. at 705; *see also, Exxon Corp. v. Eagerton*, 462 U.S. at 191, 103 S.Ct. at 2306, citing *Allied Structural Steel*, 438 U.S. at 249, 98 S.Ct. at 2724. Finally, the state legislature is not obligated to enact the *most* reasonable state law, only a reasonable state law. *See, In Re Southeast Arkansas Landfill, Inc.*, at 745. As the Arkansas court noted, the constraints inherent in the political process does not always lend itself to the passage of the *most* rational legislation. *Id.*, at 745.

■ Applying this standard to § 370.-362(6), this Court concludes that the statute does not violate the Contract Clause.[5] The Court concedes that § 370.362(6) does substantially impair the contract between the parties because it does materially alter MGC's duty with respect to certain monies upon the withdrawal of EECU (or any other Missouri credit union member). However, the Court further determines that § 370.-362(6) is a proper exercise of police power in the public interest and is rationally drawn to effectuate the legislative concern. As stated before, § 370.362(6) was enacted in order to effectuate the Missouri legislature's desire to ensure that Missouri credit unions remain stable and financially strong in these economically turbulent times. Section 370.362 was enacted for the express purpose of insuring "that credit unions in this state remain solid and financially strong and that the assets of citizens of this state remain safe and secure." 1991 Mo.Laws 875 (Emergency Clause). Section 370.362(6) reflects one means of carrying out this vital goal. Further, given the highly regulated nature of the banking industry, and the provisions of the 1978 contract among Missouri, Tennessee, and MGC specifically noting that MGC would be subject to supervision and regulation by Missouri's credit union laws, MGC had no reasonable expectation that it could remove from legislative scrutiny by-laws detrimental-

ly affecting the financial well-being of EECU (as well as any other Missouri credit union member).

■ Section 370.362 may be unfair to MGC and the Court can empathize with MGC's view that the statute is "unreasonable"; however, the test for "reasonableness" is not the degree of negative impact upon MGC, but rather if the statute is rationally related to the Missouri legislature's economic stability concerns. The Court determines it is. As the 10th Circuit Court of Appeals pointed out in reviewing the Oklahoma exemption statute,

> ". . . the Oklahoma exemption statute may not be an 'example of legislation at its fairest', but 'legislation at its fairest' is not a realistic goal. Legislatures must balance competing interests before passing any statute, and it is not our function as federal courts to second guess the resulting choice. On the contrary, '[u]nless the State itself is a contracting party, . . . '[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure.' "

*In re Walker*, at 899, citing *Energy Reserves*, 459 U.S. at 412–13, 103 S.Ct. at 705–06 (quoting *United States Trust Co. v. New Jersey*, 431 U.S. at 22–23, 97 S.Ct. at 1517–18).

This Court agrees with the 10th Circuit Court of Appeals that it is not in a position to second guess the Missouri legislature as to the need of § 370.362, especially subsection (6), to maintain the economic stability of Missouri credit unions and to provide financial security for the citizens of Missouri choosing to entrust their monies to Missouri credit unions.

Having found that the enactment of § 370.362(6) was a proper exercise of the inherent police power of the state of Missouri, and as such, does not violate the Missouri or United States Constitution, the Court finds no need to address the other points raised by plaintiff in support of its recovery of funds from defendant MGC. Section 370.362 R.S.Mo. is applicable to MGC, and pursuant to § 370.362(6), MGC is required to return to plaintiff EECU its capi-

---

**5.** The Court's reasoning and ultimate determination is equally applicable to the Missouri Constitution.

tal contribution and special assessment fee. Summary judgment will be granted to plaintiff EECU and denied to defendant MGC.

## ORDER

In accordance with the memorandum filed herein this day,

**IT IS HEREBY ORDERED** that plaintiff Educational Employees Credit Union's motion for summary judgment, filed September 17, 1992, be and is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Mutual Guaranty Corporation's motion for summary judgment, filed October 27, 1992, be and is **DENIED.**

**IT IS FINALLY ORDERED** that judgment be entered for plaintiff and against defendant on the merits of plaintiff's complaint. Plaintiff Educational Employees Credit Union is **GRANTED** immediate restitution of its capital contribution and special assessment fee in the sum total amount of Two Million Forty-Five Thousand Seven Hundred Seventeen and 98/100 Dollars ($2,045,717.98), pursuant to § 370.362(6) R.S.Mo.(1991).