ELECTRICAL AND MAGNETO SER-
VICE COMPANY, INC., Plaintiff,

v.

AMBAC INTERNATIONAL
CORPORATION,
Defendant.

No. 89–0601–CV–W–9.

United States District Court,
W.D. Missouri, W.D.

Sept. 17, 1990.

Todd A. Johnson, Robert R. Raymond, Shughart, Thomason & Kilroy, P.C., Kansas City, Mo., for plaintiff.

Truman K. Eldridge, Jr., John M. Duggan, Edward M. Dolson, Armstrong, Teasdale, Schlafly, Davis & Dicus, Kansas City, Mo., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

### I. *Background*

On June 28, 1989, plaintiff Electrical and Magneto Service Company, Inc. (EMS) filed its First Amended Complaint against defendant AMBAC International Corporation (AMBAC) seeking damages for defendant's alleged violation of the notice requirement of the Missouri Franchise Statute, Mo.Rev. Stat. § 407.405. Plaintiff, a Missouri corporation with its principal place of business in Kansas City, Missouri, was a distributor of diesel products manufactured by defendant, a Delaware corporation with its principal place of business in South Carolina.

The commercial relationship between plaintiff and defendant was governed by a Central Distributor Agreement originally entered into between plaintiff and United Technology Diesel Systems, Inc. (United) on April 1, 1984. First Amended Complaint, ¶ 5. United's principal place of business was in Massachusetts. First Amended Complaint, Exhibit A; defendant's Answer ¶ 2. Defendant is the successor in interest to United and has assumed the interest of United under the Distributor Agreement. First Amended Complaint ¶ 2; defendant's Answer ¶ 2.

Mo.Rev.Stat. § 407.405 provides in part that "[n]o person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of the cancellation, termination, or failure to renew...."

Article 12 of the Central Distributor Agreement between plaintiff and defendant contains two notice requirements relevant to this case:

B. This Agreement may be terminated without cause by either party giving written notice to the other at least ninety (90) days in advance.

C. Notwithstanding paragraph B, the Company may terminate this Agreement immediately if the Distributor fails to observe or perform any provision of this Agreement or any other issue hereunder, and such failure shall continue for ten (10) days after written notice thereof. First Amended Complaint, Exhibit A.

Based on an alleged breach of the Central Distributor Agreement by plaintiff, defendant terminated the distributorship of plaintiff following ten days notice. First Amended Complaint, Exhibits B, C and D.

The Central Distributor Agreement contains this choice of law provision: "Article 9—Governing Law. This Agreement shall be construed and enforced in accordance with the laws of the State in which the Company's principal office is located." First Amended Complaint, Exhibit A.

It is undisputed that defendant's principal office now is located in South Carolina, a state that does not have a statutory 90 day notice requirement for franchise termination. At the time plaintiff and United entered into the Central Distributor Agreement, United's principal place of business was in Massachusetts. First Amended Complaint, Exhibit A; defendant's Answer at ¶ 2.

Defendant argues that it was not required to comply with § 407.405 because Missouri enforces contractual choice of law provisions and South Carolina law applies. Suggestions in Support of Defendant's Motion for Summary Judgment at 1.

Neither AMBAC nor EMS argues for application of Massachusetts law.

Plaintiff argues that the contractual choice of law provision is unenforceable and that Missouri law should apply because 1) South Carolina was not a "chosen state" in the Distributor Agreement, 2) enforcement would violate Missouri public policy, 3) the choice of law provision is vague and uncertain, and 4) plaintiff had no power to bargain for the terms of the Distributor Agreement. Plaintiff's February 5, 1990, Brief in Opposition to Defendant's Motion for Summary Judgment. Plaintiff does not assert that defendant violated the terms of the Distributor Agreement but bases its claim solely on its assertion that defendant

violated the notice requirement of § 407.405.

## II. *Standard for Summary Judgment*

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Transport Co. v. United States*, 600 F.2d 725, 727–28 (8th Cir.), *cert. denied*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Roberts v. Browning*, 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter*, 581 F.2d 698, 703 (8th Cir.1978). The summary judgment procedure is not a "disfavored procedural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). *See also City of Mt. Pleasant v. Associated Electric Cooperative, Inc.*, 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2553.

The moving party bears the initial burden of demonstrating by reference to portions of pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the nonmoving party must be more than "merely colorable." *Id.* 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Id.* Essentially, the question in ruling on a motion for summary judgment and on a motion for directed verdict is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 106 S.Ct. at 2512.

## III. *Discussion*

### A. The Choice of Law Provision is Not Unenforceable Because It Is Vague or Part of An Adhesion Contract

Plaintiff asserts that the provision is unenforceable because it is vague and ambiguous.

The provision in the Distributor Agreement relied on by AMBAC identifies no

state's law—it only states that the law of the company's principal office will apply. This term is so vague and indefinite that AMBAC is not entitled to use it to apply South Carolina law.

Brief in opposition at 10.

In legal matters the location of a corporation's principal place of business or principal office frequently must be determined with precision. In its First Amended Complaint at ¶ 2, plaintiff asserts that defendant's principal place of business is in South Carolina. Likewise, on page two of its opposition, plaintiff states that defendant's principal place of business and principal offices are in South Carolina. The portion of the provision specifying that "the laws of the State in which the Company's principal office is located" will apply is not vague and ambiguous.

■ Plaintiff also asserts that the choice of law provision is unenforceable because plaintiff had no power to bargain for the terms of the Distributor Agreement. To support this assertion, plaintiff states:

> EMS had no choice as to the terms of the Central Distributorship Contract that it executed with United Technologies. For EMS, it was essentially a take it or leave it situation. United Technologies was a large manufacturer of diesel engine parts and supplies. EMS is a small local diesel and gasoline engine part supply store which has very little economic power when compared to United Technologies or AMBAC.

Brief in Opposition at 10.

In its Brief in Opposition at p. 2, plaintiff also states that it "had no power to bargain over any of the terms of this Contract. It was a standard form contract that United Technologies executed with all of its Central Distributors."

Plaintiff cites no factual material outside its motion or pleadings to support its assertion that the Distributor Agreement is an adhesion contract. Rule 56 requires that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The unsupported factual assertions of plaintiff are not sufficient to establish the oppressive, unreasonable or unfair use of a superior bargaining position so as to render the choice of law provision in the Distributor Agreement unenforceable.

*Modern Computer Systems, Inc. v. Modern Banking Systems*, 871 F.2d 734 (8th Cir.1989) (en banc) also does not support a finding of an adhesion contract in this case. Modern Computer, a franchisee, entered into a distributor agreement on a standard form contract which included a choice of law provision. *Id.* at 735. At the time of contracting, Modern Computer was a start-up, two-man operation. *Id.* at 736. Although it grew substantially, Modern Computer remained financially dependent on its relationship with Modern Banking. *Id.* The Eighth Circuit Court of Appeals found the distributor agreement was not an adhesion contract.

> Although we recognize that the literature of franchising law is strewn with reports of sophisticated and financially powerful franchisors taking advantage of relatively inexperienced franchisees, we do not believe that the facts in this case fit that stereotype.... Some evidence of oppressive, unreasonable or unfair use of superior bargaining position, as in a contract of adhesion, is required before a court can justifiably disregard a mutually agreed upon choice of law clause.

*Id.* at 739.

### B. The Choice of Law Provision is Enforceable Under Missouri Choice of Law Rules

A federal court exercising diversity jurisdiction must follow the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Therefore, Missouri choice of law rules will control in this case.

■ The Restatement (Second) of Conflicts of Law (1971) applies in Missouri to both tort and contract actions. *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo.1969) (en banc). Under the Restatement (Second), contractual choice of law provisions are enforceable under certain conditions. Section 187 of the Restatement (Second) provides in relevant part: "(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue...."

Defendant argues that Section 187(1) is dispositive in this case.

> The parties here could have resolved the issue of termination of the contract in the Distributor Agreement (citations omitted). In fact, the parties did resolve that issue in the Distributor Agreement and thus the contract provision on choice of law affecting said issue should be enforced in accord with the rule set forth in Section 187(1) of the Restatement.

Defendant's February 16, 1990, Reply Suggestions at 5–6.

According to the Restatement, the parties to a contract

> have power to determine the terms of their contractual engagements. They may spell out these terms in the contract. In the alternative, they may incorporate into the contract by reference extrinsic material which may, among other things, be the provisions of some foreign law. In such instances, the forum will apply the applicable provisions of the law of the designated state in order to effectuate the intentions of the parties. So much has never been doubted.

Restatement (Second) of Conflicts, Comment d to Section 187(1).

Examples of issues which "could have [been] resolved by an explicit provision" are rules relating to construction of the agreement, to conditions precedent and subsequent, to sufficiency of performance or to excuse for nonperformance. *Id.*, Comment c. Questions which cannot be determined by explicit agreement include capacity, substantial validity and illegality. *Id.*, Comment d.

The question of what notice will be given prior to termination, unlike capacity and illegality, is an issue that the parties can determine by explicit agreement.

However, if Missouri law prohibited waiver of the 90 day notice of termination requirement, United and EMS might not have been able to agree to the choice of law provision. "Whether the parties could have determined a particular issue by explicit agreement directed to that issue is a question to be determined by the local law of the state selected by application of the rule of § 188." *Id.*, Comment c.

The franchise laws of other states contain non-waiver provisions. For instance, the Minnesota Franchise Statute provides that "any condition, stipulation or provision, *including any choice of law provision*, purporting to bind any person ... is void." *Id.* at 133–34, *citing* Minn.Stat. § 80C.21.

In *Wright–Moore Corp. v. Ricoh Corp.*, 908 F.2d 128, 132 (7th Cir.1990), an Indiana franchisee argued that Indiana law should apply to its contract dispute with an out-of-state franchisor despite the choice of New York law in the franchise agreement. The Indiana Franchise Statute prohibits contract provisions "requiring the franchisee to prospectively assent to a release, ... waiver, or estoppel which purports to relieve any person from liability to be imposed by this chapter" and "limiting litigation brought for breach of the [franchise] agreement in any matter whatsoever." *Id.*, *citing* Ind.Code §§ 23–2–2.7–1(5) and (10). The court reasoned:

> The public policy, articulated in the non-waiver provisions of the statute is clear: a franchisor, through its superior bargaining power, should not be permitted to force the franchisee to waive the legislatively provided protections, whether directly through waiver provisions or indirectly through choice of law. This public policy is sufficient to render the choice to

opt out of Indiana's franchise law one that cannot be made by agreement.

*Id.*

The statutory provisions governing franchises in Missouri do not contain an anti-waiver provision. Mo.Rev.Stat. §§ 407.-400–407.420. Therefore, the parties to the agreement involved in this case could choose which state's law would provide guidance on the issue of what notice must be given prior to termination.

 Plaintiff also argues that EMS and United did not choose South Carolina law to govern contractual disputes. Plaintiff argues that Massachusetts was the "chosen state" in the Distributor Agreement because United's principal offices were located there but, because Massachusetts currently has no relation to this dispute, its state law should not apply. Brief in Opposition at 5. South Carolina law should not apply

> because it was not a 'chosen state' in the Distributor Agreement. AMBAC attempts to argue that by purchasing the assets of United Technologies and moving its offices to South Carolina, it unilaterally modified the choice of law provision in the contract between EMS and United Technologies to provide for application of the law of AMBAC's new location—South Carolina. This argument disregards fundamental concepts of contract law which require mutuality of obligation and mutual consent to modify an existing contract. (Citations omitted.)

Brief in Opposition at 5–6.

Plaintiff's literal argument disregards the explicit language of the choice of law provision. Although the Agreement does not specifically choose either Massachusetts or South Carolina law, it does select the law "of the State in which the Company's principal office is located."

The choice of law provision manifests the intent of the parties to select some state's law to govern the interpretation and enforcement of the Agreement. Any interpretation of the provision that would result in the designation of no state's law is contrary to the parties' intent.

At the time the Agreement was executed, AMBAC and United provided for the contingency that actually occurred in this case—that the state law governing their Agreement would change if the principal location of the Company changed. Under the language of the Agreement, South Carolina law applies.

### IV. *Conclusion*

Because South Carolina law applies in this case, defendant was not required to comply with the notice provision of Mo. Rev.Stat. § 407.405.

Accordingly, it is hereby ORDERED that defendant's Motion for Summary Judgment is granted.