**ELECTRICAL AND MAGNETO SERVICE CO. INC., A Missouri Corporation, Appellant,**

v.

**AMBAC INTERNATIONAL CORPORATION, A Delaware Corporation, Appellee.**

No. 90–2798.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1991.

Decided Aug. 6, 1991.

Rehearing and Rehearing en banc Denied Sept. 17, 1991.

Todd A. Johnson, Kansas City, Mo., for appellant.

Edward M. Dolson, Kansas City, Mo., argued for appellee; Edward M. Dolson and John M. Duggan, Kansas City, Mo., on the brief.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and BEAM, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Electrical and Magneto Service Company, Incorporated ("EMS") appeals the district court's entry of summary judgment. We reverse.

## I. BACKGROUND

In April 1984, United Technical Diesel Systems ("United") entered a franchise agreement with EMS. EMS distributed diesel equipment manufactured by United. The agreement contained a clause stating that the contract was to be "construed and enforced in accordance with the laws of the State in which the Company's principal office is located." The agreement defined "the Company" as United, whose principal office was located in Massachusetts; EMS' principal office was located in Missouri. The contract provided that it could be terminated by either party after giving ninety days written notice, and that "the Company" could terminate the agreement immediately if EMS breached the agreement and such breach continued for ten days after written complaint of the breach was given to EMS.

In late 1987 or early 1988, AMBAC purchased the diesel business from United and became United's successor in interest.

AMBAC is a Delaware corporation and its principal office is in South Carolina. In June 1988, AMBAC terminated the franchise agreement with EMS; the termination occurred ten days after AMBAC had given EMS written notice that AMBAC believed EMS had breached the agreement. EMS then sued AMBAC for damages for its failure to comply with Missouri law, which requires that a franchisor give ninety days notice before cancelling a franchise agreement.[1] The district court granted summary judgment in favor of AMBAC, ruling that South Carolina law, not Missouri law, governs this suit.

## II. DISCUSSION

"Federal district courts must apply the choice of law rules of the state in which they sit when jurisdiction is based on diversity of citizenship." *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir.1991). On appeal, we conduct a *de novo* review of the district court's determination of state law and application of the state's choice of law rule. *Id.* at 1321 n. 4. We agree with the district court that Missouri relies on the Restatement (Second) of Conflicts in contract actions. However, we do not agree that Missouri courts would honor the choice of law provision present in this case. Section 187 of the Restatement provides in pertinent part as follows:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

\*   \*   \*   \*   \*   \*

1. There are exceptions to Missouri's ninety-day requirement, but simple breach of the franchise

agreement is not one of them. Mo.Rev.Stat. § 407.405 (1986).

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue....

In its opinion, the district court determined that the issue of notice was one the parties could have provided for in their agreement, reasoning thusly:

Examples of issues which "could have [been] resolved by an explicit provision" are rules relating to construction of the agreement, to conditions precedent and subsequent, to sufficiency of performance or to excuse for nonperformance. [Restatement (Second) of Conflicts § 187], Comment c. Questions which cannot be determined by explicit agreement include capacity, substantial validity and illegality. *Id.*, Comment d.

*Electrical & Magneto Serv. Co. v. AMBAC Int'l Corp.*, 745 F.Supp. 1501, 1505 (W.D.Mo.1990). The court went on to hold that Missouri's statute, not having an anti-waiver provision, would permit the parties to select the notice requirements of another state's law. *Id.* at 1506.

The Restatement must be applied in the same manner as it would be applied by Missouri courts; to the extent that Missouri bypasses the Restatement's formal analysis, so must federal district courts sitting in Missouri. With this in mind, we find *State ex rel. Geil v. Corcoran*, 623 S.W.2d 555 (Mo.Ct.App.1981), the only Missouri case discussing § 187, to be instructive.

In *Corcoran*, the contract in issue contained an arbitration clause and a choice of law provision that selected New York law. *Id.* at 555. In construing the Restatement, the Missouri Court of Appeals stated that "the parties have chosen New York as the applicable law, but § 187(2)(b) calls for this choice to be disregarded if application of New York law would be 'contrary to a fundamental policy' of [Missouri's]." *Id.* at 556. The court did not utilize that portion of § 187 that calls for a distinction between issues that can and cannot be agreed to by the parties, thus any attempted distinction

in the case at bar is not relevant. Missouri's law, as contained in *Corcoran*, simply requires the choice of law provision to be given effect unless to do so would violate a fundamental policy of Missouri.

The parties concede that South Carolina has no counterpart to Missouri's notice requirement. They also seem to agree that if South Carolina law does not apply, then Missouri law will apply. Our task, then, is to determine whether Missouri's ninety-day notice requirement is such a fundamental policy of state law that Missouri courts would not apply a choice of law provision selecting a state that does not have a similar requirement. In *Corcoran*, the court of appeals determined that Missouri had "a very strong policy in favor of providing a judicial forum for the claims of investors under the blue-sky laws." *Id.* Significant factors contributing to this conclusion were the existence of a statute providing for a private action in state court and a provision voiding any attempt to waive compliance with the private right of action. *Id.* We find comparable, and in some respects greater, indicia that the ninety-day notice requirement at issue in the case *sub judice* is a fundamental policy of Missouri.

■ First, Missouri is strongly committed to the notion that different sections of a statute must be construed together, especially when they are passed by the same session of the legislature. *E.g., State ex rel. Kemp v. Hodge*, 629 S.W.2d 353, 356 (Mo.1982) (en banc); *Fleming v. Moore Bros. Realty Co.*, 363 Mo. 305, 315, 251 S.W.2d 8, 15 (1952). The ninety-day notice requirement appears in the second sentence of Mo.Rev.Stat. § 407.405 (1986). The first sentence of that section prohibits pyramid sales schemes. Inasmuch as the prohibition on pyramid sales schemes is grounded in a strong public policy against such plans, *State ex rel. Ashcroft v. Wahl*, 600 S.W.2d 175, 181 (Mo.Ct.App.1980), we must presume that all of § 407.405 is grounded in strong public policy.

■ Secondly, we note that the individual statutes comprising a chapter are to be construed consistently with each other. *See City of St. Louis v. Carpenter*, 341

S.W.2d 786, 788–89 (Mo.1961). Section 407.405 is part of Chapter 407, which deals broadly with "Merchandising Practices;" it protects Missourians from improper practices associated with charitable solicitations, Mo.Rev.Stat. §§ 407.450–.478 (1986), time-shares, *id.* §§ 407.600–.630, home solicitations, *id.* §§ 407.700–.720, rent-to-own agreements, *id.* §§ 407.660–.665 (Supp. 1990), buyers' clubs, *id.* §§ 407.670–.679 (Supp.1990), automobile subleasing and renting, *id.* §§ 407.730–.748 (Supp.1990), and health clubs. *Id.* §§ 407.325–.340 (Supp.1990). Chapter 407 also prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise...." *Id.* § 407.020.1 (1986).[2] In short, Chapter 407 is designed to regulate the marketplace to the advantage of those traditionally thought to have unequal bargaining power as well as those who may fall victim to unfair business practices. Having enacted paternalistic legislation designed to protect those that could not otherwise protect themselves, the Missouri legislature would not want the protections of Chapter 407 to be waived by those deemed in need of protection. Furthermore, the very fact that this legislation is paternalistic in nature indicates that it is fundamental policy: "a fundamental policy may be embodied in a statute which ... is designed to protect a person against the oppressive use of superior bargaining power." Restatement (Second) of Conflicts § 187 comment g.[3]

Finally, we observe that both aggrieved parties and, in some cases, prosecuting attorneys and the attorney general may bring an action against franchisors that fail to comply with the law. Aggrieved parties can bring legal action to recover actual damages, including loss of goodwill and the cost of the suit, and may also obtain injunctive relief. *Id.* § 407.410.2. A willful violation of § 407.405 constitutes a class D felony. *Id.* § 407.420. Although we have been assured that no criminal action has been brought pursuant to this statute, the provision does exist. Perhaps, in a situation deemed sufficiently egregious, those charged with bringing criminal prosecutions under this statute will do so. For our purposes, it is sufficient that the criminal provision exists, and its existence is significant because the legislature would not allow a criminal law to be bypassed by the mere existence of a choice of law provision contained in a contract.

Although our above discussion convinces us that Missouri courts would not honor the choice of law provision present in this case, we further explain our position by addressing AMBAC's citation of decisions from other jurisdictions purporting to support its position. None of these decisions involve Missouri law, and there is no indication that Missouri would be likely to follow the lead of any other particular state. One of these decisions, *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.,* 871 F.2d 734 (8th Cir.1989) (en banc), did come from this circuit, so we will discuss this particular case in greater detail.

As an initial matter, *Modern Computer* suffers from the same inadequacy as the other cases relied upon by AMBAC; namely, it did not involve Missouri law. Almost equally important, however, *Modern Computer* did not involve the same fact pattern present in the case at bar. In *Modern Computer,* a Nebraska District Court, faced with a choice of law provision select-

---

**2.** For a history of Chapter 407, see generally Webster, *Combatting Consumer Fraud in Missouri: The Development of Missouri's Merchandising Practices Act,* 52 Mo.L.Rev. 365 (1987).

**3.** AMBAC argues that there is no evidence of economic disparity between itself and EMS. However, the Missouri Legislature created a legislative presumption that franchisees are in an inferior bargaining position with respect to franchisors and thus are entitled to protection

from the oppressive use of the franchisor's superiority. The Legislature has further decreed that allowing franchisors to terminate franchise agreements with less than ninety-days notice is an oppressive use of bargaining strength. Franchisees are entitled to rely on these presumptions and take advantage of the statute's protection regardless of their true economic power; for this reason, AMBAC's argument is of little consequence.

ing Nebraska law, was asked to ignore the choice of law provision and apply Minnesota law. *Id.* at 737. In the case at bar, a Missouri District Court, faced with a choice of law provision selecting South Carolina law, was asked to apply Missouri law. Put another way, the *Modern Computer* court was asked to choose between enforcing a choice of law provision selecting the forum's law and applying another forum's law; this case asks the court to choose between enforcing a choice of law provision selecting another forum's law and applying this forum's law. The distinction is significant because it is harder to convince a court to ignore a choice of law provision in favor of its forum's law than it is to convince a court to ignore such a provision selecting a foreign forum's law. Consequently, the *Modern Computer* analysis is not useful in this case.

The Missouri statutes in question, relating to merchandising and trade practices, are obviously a declaration of state policy and are matters of Missouri's substantive law. To allow these laws to be ignored by waiver or by contract, adhesive or otherwise, renders the statutes useless and meaningless.

## III. CONCLUSION

Missouri case law provides that a choice of law provision will be honored unless to do so would violate a fundamental public policy of the state. We conclude that the ninety-day notice requirement contained in Mo.Rev.Stat. § 407.405 represents fundamental public policy of Missouri. Because application of South Carolina law would infringe upon this policy by denying EMS the protections of Missouri's law, South Carolina law cannot be applied, and we reverse and remand this case for further proceedings consistent with this opinion.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. This case is controlled by *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734 (8th Cir.1989) (en banc) and should be affirmed on the basis of the well-reasoned opinion of the district court.

Here, we have a franchisee, whose franchise was cancelled for cause upon the ten days notice provided in the contract, who is now using an inapplicable Missouri statute to extract damages from a franchisor that the franchisee had willfully ceased to serve. This is hardly the stuff upon which fundamental state policy should be built. Further, the Missouri statute that EMS seeks to enforce has six exceptions that permit cancellation without any timeline whatever. This further depreciates the argument that ninety days of notice for cancellation of a franchise is (or should be) a fundamental policy adopted by the Missouri Legislature. I would affirm.