In re Steven W. MILLER, and
B. Eileen Miller, Debtors.

Steven W. Miller, and B. Eileen
Miller, Plaintiffs,

v.

Rabo Ag Services, Defendant.

Bankruptcy No. 03–20394–659.
Adversary No. 04–2025–659.

United States Bankruptcy Court,
E.D. Missouri,
Northern Division.

Feb. 21, 2006.

James R. Inghram, Inghram and Inghram, Quincy, IL, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATHY A. SURRATT–STATES, Bankruptcy Judge.

The matter before the Court is Plaintiffs' Complaint and Defendant's Answer to Complaint and Amended Answer to Complaint. Plaintiff filed a Memorandum of Law on June 24, 2005. Defendant filed Defendant's Brief in Opposition to Complaint on July 27, 2005. The Court then took the matter under submission. The Court upon consideration of the record as a whole makes the following FINDINGS OF FACT:

On October 11, 2001, Steven W. Miller and B. Eileen Miller (hereinafter "Millers") executed and delivered to Ag Services of America, Inc. (hereinafter "Ag Services") a promissory note in the principal amount of $450,000.00 and executed and delivered to Ag Services security agreements which granted a security interest in farm equipment, farm products (which include harvested or un-harvested crops) and certain titled vehicles.[1] Pursuant to the terms of the promissory note, the full balance of any unpaid principal and interest was to be paid in full on January 15, 2003. The promissory note also included a choice of law provision indicating that

---

1. Ex. 1.

the contract was to be construed under Iowa law.

The pre-maturity interest rate as provided in the note was 6.25% (2% in excess of 4.25%, the prime rate as published in the Wall Street Journal–Midwest Edition for January 15, 2003). The promissory note provided for default and post-maturity interest at a rate of 21% per annum compounded annually on any principal or interest which was unpaid at the note's maturity or upon acceleration of the note, and also provided for costs and reasonable attorney's fees.

The Millers failed to pay the balance due on the note on or before the date of maturity, January 15, 2003. However, the Millers were engaged in negotiations with Ag Services for an extension of the note on January 15, 2003. Nevertheless, Ag Services charged the Millers interest on the unpaid principal and interest at the default interest rate of twenty one percent on January 15, 2003. Ag Services failed to provide notice to the Millers of the increased interest rate. The value of the Millers' collateral exceeded the debt owed to Ag Services and Ag Services was at all times a fully secured creditor. Ag Services also charged the Millers attorney's fees and costs that were not itemized.

The Millers filed for relief under Chapter 11 of the Bankruptcy Code on June 27, 2003. The total balance of the Millers' indebtedness to Ag Services as of June 27, 2003, was $150,117.45. Plaintiff's Fourth Amended Plan of Reorganization (hereinafter "Fourth Amended Plan") was confirmed by this Court on April 26, 2004. The Fourth Amended Plan provided for 100% payment to Ag Services. The Millers paid Ag Services a total of $326,-307.60[2] between the date of acceleration of

the note on January 15, 2003, and January 31, 2004, which constituted full payment to Ag Services under the terms of the note. The Fourth Amended Plan provided a reservation of rights that permitted the Millers to object to the default penalty interest paid to Ag Services before December 31, 2004. This adversary proceeding was filed on December 23, 2004. The Court after weighing the merits of each argument reaches a decision below.

## JURISDICTION AND VENUE

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 (2004), and Local Rule 81–9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (2004). Venue is proper under 28 U.S.C. § 1409(a) (2004).

## CONCLUSIONS OF LAW

■ The Bankruptcy Code provides, "[t]o the extent that an allowed secured claim is secured by the property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and *any reasonable fees, costs, or charges provided for under the agreement* under which such claim arose." 11 U.S.C. § 506(b) (2004) (emphasis added). Section 506(b) permits oversecured creditors to recover "preconfirmation interest on . . . arrearages." *Rake v. Wade,* 508 U.S. 464, 471, 113 S.Ct. 2187, 2191, 124 L.Ed.2d 424, 433 (1993); *see also In re White,* 260 B.R. 870, 879 (8th Cir. BAP 2001) (oversecured creditors are entitled to postpetition interest).

---

**2.** This amount included: the balance due on the note as of January 31, 2003 of $278,471.12; an advance of $8,013.00 made on November 26, 2003; and post maturity interest plus unitemized and unstated attorney's fees and costs totaling $39,823.48.

■ The "rate of interest to be paid is the contract rate." *In re Johnston,* 44 B.R. 667, 669 (Bankr.W.D.Mo.1984). State law governs the contract rate of interest of such agreements and default interest is generally allowed unless it is imposed in derogation of state law. *See generally,* 4 Lawrence P. King, Collier on Bankruptcy P506.04[2][b][ii] (15th rev. ed.2000).

Here, the parties agree that Ag Services is an oversecured party for purposes of Section 506(b). The parties also agree that Ag Services is entitled to postpetition interest under the promissory note. However, there is a dispute as to whether Ag Services is entitled to default interest under the promissory note. Further complicating this issue is the presence of a choice of law clause in favor of Iowa law, which raises a conflict of laws issue that must be interpreted under Missouri conflict of laws rules since the contract was executed within the State of Missouri.

■ "A fundamental principle of conflicts is that a forum state will always apply forum procedure, but it will choose the applicable substantive law according to its own conflicts of law doctrines." *Ernst v. Ford Motor Co.,* 813 S.W.2d 910, 921 (Mo.Ct.App.1991). Missouri courts generally construe contract actions under Section 187 of the Restatement (Second) of Conflict of Laws (1971). *Id.*

> The law of the State chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless ... application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be

the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187(2)(b) (1971).

■ Application of Section 187(2)(b) requires three separate inquiries. First, a court must decide which state's law applies in default under Section 188 in the absence of an effective choice of law provision. Second, a court must decide whether the default state has a materially greater interest in the outcome of the particular issue than the state chosen under the contract. Finally, a court must decide whether application of the law of the state chosen under the contract is contrary to a fundamental policy of the default state. *Baxter Int'l, Inc. v. Morris,* 976 F.2d 1189, 1196 (8th Cir.1992)

■ Missouri contract law applies in default under Section 188 in the absence of an effective choice of law provision. Under the Restatement (Second) of Conflict of Laws § 188,

> [in] the absence of an effective choice of law by the parties, the contacts to be taken into account ... include: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 188(2) (1971).

Here, Missouri is the place of contracting, negotiation, performance, and loci of the subject matter of the contract. The Millers are domiciled and have their residence within Missouri. The Millers' farm-

ing activities are also conducted within Missouri. Therefore, the contacts concerning this transaction weigh heavily in favor of Missouri under Section 188, so Missouri law applies.

Missouri also has a materially greater interest in the outcome of the particular issue in this case. "The local law of the state selected by application of § 188(2) determines whether the default state has the most significant relationship to the transaction." *Ernst v. Ford Motor Co.,* 813 S.W.2d at 921. Here, Missouri has a greater interest in the transaction before the Court as discussed above. As discussed in more detail below, Missouri has laws to protect its residents from default interest in contracts whereas Iowa has no analogous laws. Therefore, Missouri has a materially greater interest in the outcome of the particular issue in this case.

██ Application of Iowa law in this case violates a fundamental policy under Missouri law. Under Missouri law, "a choice of law provision will be honored unless to do so would violate a fundamental public policy of the state." *Electrical and Magneto Service Co. v. AMBAC Int'l Corp.,* 941 F.2d 660, 664 (8th Cir.1991). "[A] fundamental policy may be embodied in a statute which...is designed to protect a person against the oppressive use of superior bargaining power." *Id.* at 663 (citing *Restatement (Second) of Conflicts § 187* comment g).

█ Under Missouri law, "[n]otwithstanding the provisions of any other law to the contrary, it is lawful for the parties to agree in writing to any rate of interest, fees, and other terms and conditions in connection with any: (3) [r]eal estate loan

other than real estate loans of less than five thousand dollars secured by real estate used for an agricultural activity." Rev. Stat. Mo. § 408.035(3) (2004). However, a default interest provision must comport with Mo. Code Regs. Ann. tit. 4, § 140–6.050 (2004)[3] to be valid. *Killion v. Bank Midwest,* 886 S.W.2d 29, 33 (Mo.Ct. App.1994) (court held that state regulation limiting default interest provisions to debtor company's business profitability in a contract was consistent with Section 408.035(3) and therefore valid).

In *Interstate Agri Services, Inc. v. Bank Midwest,* 982 S.W.2d 796 (Mo.Ct.App. 1998), a bank issued promissory notes to a group of plaintiffs that included a default interest rate provision. Upon default, the bank exercised that provision against several plaintiffs. The Court reasoned that the Missouri statutes provide a remedy for a party who has paid interest exceeding that imposed under Missouri law, which indicates some intent on the part of the Missouri legislature to curb default interest in contracts.

Under Iowa law, "[t]he following persons may agree in writing to pay any rate of interest, and a person so agreeing in writing shall not plead or interpose the claim or defense of usury in any action or proceeding, and the person agreeing to receive the interest is not subject to any penalty or forfeiture for agreeing to receive or for receiving the interest: (5)[a] person borrowing money or obtaining credit...for agricultural purposes..." Iowa Code § 535.2.a.5 (2004). The term " 'agricultural purposes' means a purpose related to the production, harvest, exhibition, marketing, transportation, processing or manufacture of agricultural products by

---

**3.** "(1) [a] bank may contract to receive additional interest on any loan for business purposes contingent only upon profitability and successful operation of the business receiving the proceeds of the loan. In no event shall the repayment of interest be subject to any contingency." Mo. Code Regs. Ann. tit. 4, § 140–6.050 (2004).

a person who cultivates, plants, propagates or nurtures the agricultural products." Iowa Code § 535.13 (2004).

A lender and borrower may contract as to any rate of interest and may also contract under a default rate that exceeds the original contract rate upon default. *Federal Land Bank v. Wilmarth,* 218 Iowa 339, 252 N.W. 507, 510 (Iowa 1934); *see also Weinrich v. Hawley* 236 Iowa 652, 19 N.W.2d 665, 669 (Iowa 1945) (penalty interest was allowed on a note that had reached maturity).

Here, the default interest provision is not related to the profitability of the Millers' business, which is required under Missouri law. The default interest rate is therefore invalid under Missouri law since it contravenes Mo. Code Regs. Ann. tit. 4, § 140–6.050. However, the outcome is different under Iowa law since the Millers received the loan from Ag Services to engage in the agricultural purpose of producing farm products. Ag Services would therefore be entitled to default interest on its loan under Iowa law. Consequently, Iowa contract law impairs a fundamental right protected under Missouri contract law. Therefore, the choice of law provision in the promissory note is unenforceable under Missouri law and the pre-default rate of interest will stand.

The remaining issue is whether attorney's fees are allowed under Section 506(b). Under Section 506(b), "[r]ecovery of fees, costs, and charges...is allowed only if they are reasonable and provided for in the agreement under which the claim arose." *U.S. v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290, 298 (1989). "To recover attorneys' fees under section 506(b), then, a creditor must establish: (1) that it is oversecured in excess of the fees requested; (2) that the fees are reasonable; and (3) that the agreement giving rise to the claim provides for attorney's fees." *In re*

*Schriock Construction, Inc.,* 104 F.3d 200, 201 (8th Cir.1997) (citing *In re Foertsch,* 167 B.R. 555, 562 (Bankr.D.N.D.1994)).

Here, there is no dispute between the Millers and Ag Services that the latter is an oversecured creditor. There is also no dispute that the agreement provides for attorney's fees. However, Ag Services failed to provide sufficient evidence to the Court to substantiate its claim to legal fees. Consequently, there is no basis for the Court to inquire into the reasonableness of Ag Services' attorney's fees. Thus, Ag Services has failed to demonstrate that it is entitled to attorney's fees at this point. Therefore, the Court concludes that Plaintiffs are entitled to a refund of the difference between the original interest and default interest and of the unitemized attorney's fees and costs.

By separate order, judgment will be in favor of Plaintiffs.

### ORDER

The matter before the Court is the Plaintiffs' Complaint and Defendant's Answer to Complaint and Amended Answer to Complaint. For the reasons set forth in this Court's Findings of Fact and Conclusions of Law entered separately,

**IT IS ORDERED THAT** the relief requested in Plaintiffs' Complaint is GRANTED and judgment is entered in favor of Plaintiffs Steven W. Miller and B. Eileen Miller and against Defendant Rebo Ag Services; and Plaintiffs are entitled to a refund of the difference between the original interest and default interest paid to Defendant; and Plaintiffs are entitled to a refund of the unitemized attorney's fees and costs paid by Plaintiffs to Defendant; and this is the final judgment and order of the Bankruptcy Court in this Case.